AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Oregon

FILED 10 DEC '18 13:27 USDC-ORP

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>U.S. Priority Mail Express parcels EL079259315US and<br>EL079259307US<br>as described in Attachment A-1 and A-2 | )<br>)<br>)<br>)<br>)<br>)<br>Case No. **'18 -MC-1059  A - B** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

U.S. Priority Mail Express parcels EL079259315US and  EL079259307US as described in Attachment A-1 and A-2.

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and 846 | Unlawful Distribution of Controlled Substances and Conspiracy to do the same. |
| 21 U.S.C. § 843(b) and 846 | Unlawful Use of Mail in Controlled Substance Violation and Conspiracy. |
| 18 U.S.C. § 1952(a)(1) | Unlawful Use of the Mail with Intent to Distribute the Proceeds of Unlawful Activity. |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

David L. Hardin, Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/10/18

_____
*Judge's signature*

City and state:  Portland, Oregon

.Youlee Yim You, United States Magistrate Judge
*Printed name and title*

### Attachment A-1

### Parcels to be Searched:

The following U.S. Postal Service parcels, presently in the possession of the U.S. Postal

Inspection Service at the USPIS Portland Domicile, 7007 NE Cornfoot Dr., Portland, OR 97218:

### DESCRIPTION OF THE SUBJECT PARCELS

### Subject Parcel 1

U.S. Priority Mail Express parcel number:　　　EL079259315US

Sender name and address:　　　Chris Cheney
809 Fremont Ave.
Eugene, OR 97404

Recipient name and address:　　　John Tutrone
796 Skipper Ave
Eugene, OR  97404

Parcel Type:　　　Priority Mail Medium Flat Rate Box

Parcel Weight:　　　3 pounds, 10 ounces



**Attachment A-1**　　　　　　　　　　　　　　　　　　　　　**Page 1**

## Attachment A-2

### Parcels to be Searched:

The following U.S. Postal Service parcels, presently in the possession of the U.S. Postal

Inspection Service at the USPIS Portland Domicile, 7007 NE Cornfoot Dr., Portland, OR 97218:

### Subject Parcel 2

| | |
|---|---|
| U.S. Priority Mail Express parcel number: | EL079259307US |
| Sender name and address: | John Tutrone<br>796 Skipper Ave.<br>Eugene, OR 97404 |
| Recipient name and address: | Drew Haines-Main<br>110 Kourt Drive<br>Eugene, OR 97404 |
| Parcel Type: | Priority Mail Medium Flat Rate Box |
| Parcel Weight: | 4 pounds, 4 ounces |



**Attachment A-2**

**Page 1**

UNITED STATES DISTRICT COURT       )
                                        )       AFFIDAVIT OF DAVID HARDIN
DISTRICT OF OREGON                        )

### Affidavit in Support of an Application Under Rule 41 for a Search Warrant

I, David Hardin, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Postal Inspector with the United States Postal Inspection Service (USPIS) and have been since October 2018.   I am currently assigned to the Portland, Oregon Domicile Office of the USPIS.   As a Postal Inspector, I am empowered by 18 U.S.C. § 3061 to conduct investigations and to make arrests for offenses against the United States.   As part of my duties, I investigate incidents where the United States mail system is used for the purpose of transporting non-mailable matter, including controlled substances such as marijuana, cocaine, methamphetamine, and heroin, as well as proceeds of the sale of controlled substances. In December 2008, I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (F.L.E.T.C.) in Glynco, Georgia.   From November 2008 to February 2018, I served as a U.S. Secret Service Special Agent.   Prior to that, I served five years in the U.S. Navy as an Intelligence Officer, achieving the rank of Lieutenant.   In October 2018, I completed a USPIS training course on Prohibited Mailings involving narcotics.

### Applicable Law

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search U.S. Priority Mail Express parcels EL079259315US (hereinafter "Subject Parcel 1") and EL079259307US (hereinafter "Subject Parcel 2"), as described in Attachment A-1/A-2, for evidence, contraband, fruits, and

**Affidavit of David Hardin**                                                       **Page 1**

instrumentalities of violations of the federal criminal statutes involving the Unlawful Use of the U.S. Mail with Intent to Distribute Proceeds of Unlawful Activity, in violation of 18 U.S.C. § 1952(a)(1); the Unlawful Use of a Communication Facility (U.S. Mail) to Distribute Controlled Substances, in violation of 21 U.S.C. § 843(b), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; the Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853. As set forth below, I have probable cause to believe that such property and items, as described in Attachment B, will be found in the Subject Parcel, as described in Attachment A-1/A-2. The Subject Parcels are presently in the possession of the U.S. Postal Inspection Service at the USPIS Portland Domicile, 7007 NE Cornfoot Rd., Portland, OR 97218.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, and information gained through my training and experience.

### Background on Controlled Substances Sent Through the U.S. Mail

4.      I know from my training and experience that drug traffickers frequently use U.S. Postal Service Priority Mail Express and Priority Mail services to ship controlled substances, including marijuana, cocaine, heroin, and methamphetamine. I know from my training and experience that illegal drug recipients often use U.S. Postal Service Priority Mail Express and Priority Mail services to ship the proceeds of the illegal sale of controlled substances, or moneys

used or intended to be used to facilitate the illegal sale of controlled substances, in cash, or other controlled substances, to suppliers of controlled substances.   I know from training and discussions with other law enforcement officers that these controlled substances, proceeds of the illegal sale of controlled substances, and funds related to the facilitation of the illegal sale of controlled substances are often found during parcel investigations and interdictions.

5.      Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know Oregon is a marijuana source state for the mailing of controlled substances to destination locations across the United States.   Current Oregon state laws permitting the recreational and medical growth, purchase, and possession of marijuana provide individuals with significant quantities of marijuana, which can be illegally mailed to other states where marijuana is illegal and less available.   Accordingly, marijuana sales are substantially more profitable outside the state of Oregon than they are inside the state of Oregon.   I know from my training and experience that controlled substances, especially marijuana, are frequently mailed from Oregon to other states and that cash payments are mailed back to Oregon drug suppliers in return.

6.      Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators often exist when drug traffickers use the U.S. mails to ship controlled substances, proceeds of the sale of controlled substances, or funds to facilitate the sale of controlled substances from one location to another.

7.      Drug traffickers use U.S. Postal Service Priority Mail Express and Priority Mail services because of the reliability of delivery, speed of delivery, low cost, the customer's ability to track the package's shipment online, as well as the low risk of detection by law enforcement. Shippers using U.S. Postal Service Priority Mail Express and Priority Mail services pay for the

**Affidavit of David Hardin**                                                                                    **Page 3**

benefit of being able to confirm the delivery of the parcel by checking the U.S. Postal Service website or calling a toll-free number.

8.    I know from my training and experience that U.S. Postal Service Priority Mail Express is used primarily for business-related mailings.   Unlike typical U.S. Postal Service Priority Mail Express business mailings, which usually have typed labels, packages containing controlled substances, proceeds, and/or facilitation funds often have handwritten address information.   The handwritten label on U.S. Postal Service Priority Mail Express packages containing controlled substances and/or proceeds usually does not contain a business account number and/or credit card number.   This is an indication that the sender likely paid cash.   A credit card or business account number would better enable law enforcement officers to connect the package to identifiable individuals.   I further know that drug traffickers who use U.S. Postal Service Priority Mail Express services often either waive or do not request a recipient signature upon delivery of the mail parcel.   This can allow the parcel to be delivered without the addressee or the addressee's agent having to sign for the parcel, contingent upon the parcel being left in a secure location at the address.

9.    I know from my training and experience that drug traffickers who mail controlled substances, and the drug purchasers who send payment in the form of cash or other drugs, often use false or incomplete information in labeling the parcels.   In this way, drug traffickers can distance themselves from the package containing controlled substances, the proceeds of the sale of the controlled substances, or facilitation funds in the event the package is intercepted by law enforcement.

10.    I know from my training and experience that drug traffickers who mail controlled substances, proceeds of the illegal sale of controlled substances, and facilitation funds are often

**Affidavit of David Hardin**                                                                                                 **Page 4**

aware that parcels are inspected by trained canines.    Accordingly, drug traffickers often attempt

to wrap their parcels, and the contents of their parcels, in a manner they believe will disguise the

odor and contents of the items in the parcels.    In order to conceal the distinctive smell of

controlled substances from certified controlled substance detection canines, these packages are

sometimes sealed with the use of tape around the seams.    Also, the parcels often contain other

parcels which are carefully sealed to prevent the escape of odors.    Sometimes perfumes, coffee,

dryer sheets, tobacco, or other strong-smelling substances are used to mask the odor of the

controlled substances, proceeds of the illegal sale of controlled substances, and/or facilitation

funds being shipped.

### Statement of Probable Cause

11.    On November 29, 2018, I went to the Portland Processing and Distribution

Center/Facility (PDC/PDF), located at 7007 Cornfoot Rd, Portland, OR 97218 as part of my

regular investigatory duties.    I reviewed parcels for delivery in Oregon that were mailed from

other states.    While reviewing parcels I noticed Subject Parcel 1, and saw that the parcel was

addressed from "Chris Cheney, 809 Fremont Ave., Eugene, OR 97404; Telephone 541-XXX-

2326" and to "John Tutrone, 796 Skipper Ave., Eugene, OR 97404."    The parcel weighed 3

pounds, 10 ounces, the scheduled date of delivery was November 29, 2018 before 3:00 PM, and

the mailer paid $71.15 in cash to purchase the postage.    I noticed the mailing label was

handwritten and it appeared it was addressed from a private individual to another private

individual.

12.    I conducted open source and law enforcement searches and determined the

sender, "Chris Cheney," associates with the sender address.    The recipient, "John Tutrone," also

**Affidavit of David Hardin**                                                    **Page 5**

associates with the recipient address.   However, the telephone number utilized by the sender,

"Chris Cheney," resolves back to Cori Haines-Tutrone, the spouse of recipient John Tutrone.

13.    Criminal history checks for Chris Cheney returned the following:   a February

2010 arrest in Oregon of for 2nd Degree Assault.   Checks for John Tutrone returned the

following: a December 1993 arrest in Oregon for delivery/manufacturing of a controlled

substance; and, a May 1994 arrest in Oregon for delivery/manufacturing of a controlled

substance.

14.    Continuing on November 29, 2018, I reviewed USPS business records and

identified Subject Parcel 2 in the mail stream destined for delivery to the Subject Parcel 1

recipient address.   I observed Subject Parcel 2 was mailed at the same transaction as Subject

Parcel 1.

15.    I know from my training and experience that drug traffickers who mail controlled

substances, and the drug purchasers who send payment in the form of cash or other drugs,

sometimes send multiple small parcels, in close succession, often from different Post Offices,

verses one large parcel.   In this way, drug traffickers can minimize losses suffered if law

enforcement officials intercept parcels containing controlled substances or the proceeds of the

sale of the controlled substances.

16.    Continuing on November 29, 2018, Portland Police Bureau H.I.T. Officer S.

Groshong, a Certified Controlled Substance Dog Handler and his certified controlled substance

detection dog Rex responded to the USPIS Portland Domicile located at 7007 NE Cornfoot Dr.,

Portland, OR 97218.   I prepared a "line" of parcels of similar size and appearance to Subject

Parcel 1.   H.I.T. Officer Groshong and his certified controlled substance detection dog Rex

"proofed" the line and the area surrounding the line.   Proofing a line of parcels is the process by

**Affidavit of David Hardin**                                                    **Page 6**

which a controlled substance dog handler deploys a controlled substance detection dog on a line

of control parcels to confirm that none of the control parcels is emitting the odor of controlled

substance the controlled substance detection dog is trained to detect.   Officer Groshong stated

Rex did not alert to the presence of the odor of controlled substance on the parcels in the line or

the area surrounding the line at that time.   Officer Groshong and Rex left the immediate area

and I put Subject Parcel 1 in the line in a position unknown to Officer Groshong and Rex.

Officer Groshong returned to the line and deployed Rex on the line of parcels.   Officer

Groshong told me Rex alerted, in the manner he is trained, to the presence of the odor of

controlled substance on Subject Parcel 1.   Rex did not alert to any of the other parcels in the

line.   Officer Groshong and Rex's qualifications, training, and training accuracy rate are set

forth in Exhibit 1, attached hereto and incorporated herein. Continuing on November 29, 2016, at

approximately 1000 PST, I contacted USPS employees in Eugene, OR reference Subject Parcel

2.   I requested the USPS Eugene employees send Subject Parcel 2 to me for further

investigation.

17.     Continuing on that day, at 1335 PST, I scanned Subject Parcels 1 and 2,

respectively, "Seized by Law Enforcement" in the USPS Product Tracking and Reporting (PTR)

system.   PTR is the system that allows customers to check and/or receive updates to the progress

of parcels as they travel through the USPS delivery system.   The "Seized by Law Enforcement"

entry tells the customer to contact the USPIS to make inquiries about the status of seized parcels.

18.     Continuing on that day, John Tutrone contacted the USPIS inquiring about the

status of seized parcels, Subject Parcels 1 and 2.

19.     On November 30, 2018, I received Subject Parcel 2 at the USPIS Portland

Domicile.   Subject Parcel 2 was addressed from "John Tutrone, 796 Skipper Ave., Eugene, OR

**Affidavit of David Hardin**                                                      **Page 7**

97404; Telephone 541-XXX-2326" and to "Drew Haines-Main, 110 Kourt Drive, Eugene, OR

97404." The parcel weighed 4 pounds, 4 ounces, the scheduled date of delivery was November

29, 2018 before 3:00 PM, and the mailer paid $77.55 in cash to purchase the postage.   I noticed

the mailing label was handwritten in similar fashion to Subject Parcel 1 and it appeared it was

addressed from a private individual to another private individual.

      20.      Continuing on that day, Portland Police Bureau H.I.T. Officer S. Groshong, a

Certified Controlled Substance Dog Handler and his certified controlled substance detection dog

Rex responded to the USPIS Portland Domicile.   I placed Subject Parcel 2 in the USPIS

Portland Domicile Administrative Office area previously searched by Officer Groshong and Rex.

Officer Groshong and Rex were not present when Subject Parcel 2 was placed in the USPIS

Portland Domicile Administrative Office area.   Rex was directed by Officer Groshong to

examine the USPIS Portland Domicile Administrative Office area.   Officer Groshong informed

me that Rex alerted on Subject Parcel 2 in the manner that he was trained to alert when he

detects the odor of a controlled substance, and did not alert on any other objects or locations in

the USPIS Portland Domicile Administrative Office area.

      21.      I know from my training and experience and discussions with other law

enforcement officers that individuals who traffic in illegal controlled substance or the proceeds

of the sale of illegal controlled substance often use bank accounts called "funnel accounts" to

move the proceeds of the sale of illegal controlled substance from one geographic location to

another.   Funnel accounts have the following characteristics:   an individual, colluding with

traffickers of illegal controlled substance, uses an account at banks or credit unions whose

accounts can readily receive cash deposits in multiple states through their own branches or

through shared branches.   Multiple individuals deposit the cash proceeds of illegal controlled

**Affidavit of David Hardin**                        **Page 8**

substance sales into this account at different bank or credit union branches, often in multiple

states geographically distant from the branch in which the account was opened or domiciled.

The deposits are normally kept below $10,000 so co-conspirators can avoid bank identification

and record keeping requirements.   The funds are then withdrawn by co-conspirators through

wire transfers, checks, cashier's checks, and ATM withdrawals in furtherance of illegal

controlled substance trafficking.   These deposits and withdrawals are often done on the same or

consecutive days and there is normally not an identifiable source of the deposited funds.

22.    I reviewed bank records from Wells Fargo Bank for John Tutrone that showed

suspicious interstate movement of funds between Florida, Pennsylvania and Oregon.   Tutrone

was the sole owner of a personal checking account and was the sole signatory on the account.   I

identified interstate cash deposit activity out of Tutrone's geographical area followed quickly by

cash withdrawals.   For example, I reviewed bank records, which showed that a cash deposit for

$8,740 was made at a branch in Philadelphia, PA on July 18, 2018.   Bank records also showed

the cash deposits of $8,400 and $9,000 in Orland, FL and Winter Park, FL in August 2018 and

September 2018, respectively.   Tutrone withdrew $7,000 in cash from a Eugene, OR branch two

days after the $9,000 deposit at a Winter Park, FL branch in September 2018.

23.    On December 3, 2018, I contacted John Tutrone at telephone number, 541-XXX-

2326.   Tutrone stated he mailed the two parcels from the Orlando, Florida area to himself and

that the parcels contained $30,000 in cash.   Tutrone further stated the cash was received from a

sale of a food truck business to a buyer named Todd Gobielle.   Tutrone and his wife, Cori

Haines, purportedly own a food truck business, "I Scream For Waffles," and is selling that

business to Todd Gobielle.   Tutrone stated he did not expect to be paid in cash by the buyer and

believed it was unlawful to fly home to Eugene with $30,000 in cash.   He further stated he

**Affidavit of David Hardin**                                                                                    **Page 9**

researched mailing currency via Google and decided it was best to mail the parcels to himself.
Tutrone provided a telephone number for Todd Gobielle and also faxed a copy of the purchase
agreement dated, November 28, 2018 between Cori Haines and Todd Gobielle to the USPIS
Portland Domicile.   Tutrone could not elaborate further on the nature of the business agreement
and future payments.   Tutrone stated he would be open to discussing the parcels at a later date.
I that point, I concluded the conversation.

24.     Attempts to contact the buyer of Tutrone's food truck, Todd Gobielle, met with
negative results.

25.     I reviewed USPS business records and determined a customer made multiple
inquiries, from the same Internet Protocol (IP) Address associated with John Tutrone's cell
phone number, from October 2018 to November 2018.   The inquiries concerned twenty-three
(23) outbound parcels from Oregon to seven (7) different Florida addresses with some parcels
weighing up to forty (40) pounds.   I know from my training and experience that this pattern is
indicative of controlled substances mailed to states where marijuana is illegal and less available.

26.     On December 7, 2018, I contacted John Tutrone at telephone number 541- XXX-
2326.   Tutrone stated at the advice of his attorney he would not discuss the circumstances of the
parcels at this time.

27.     Description of Subject Parcel 1

U.S. Priority Mail Express parcel number:          EL079259315US

Sender name and address:                           Chris Cheney
                                                   809 Fremont Ave.
                                                   Eugene, OR 97404

Recipient name and address:                        John Tutrone
                                                   796 Skipper Ave
                                                   Eugene, OR   97404

**Affidavit of David Hardin**                                         **Page 10**

Parcel Type:                              Priority Mail Medium Flat Rate Box

Parcel Weight:                            3 pounds, 10 ounces

    28.    Description of Subject Parcel 2

U.S. Priority Mail Express parcel number:    EL079259307US

Sender name and address:                  John Tutrone
                                          796 Skipper Ave.
                                          Eugene, OR 97404

Recipient name and address:               Drew Haines-Main
                                          110 Kourt Drive
                                          Eugene, OR 97404

Parcel Type:                              Priority Mail Medium Flat Rate Box

Parcel Weight:                            4 pounds, 4 ounces

    29.    Based on my training and experience, all of these characteristics of Subject Parcel

1 and 2 are consistent with drug trafficking.   Subject Parcel 1 and 2 appear to contain drugs or

drug proceeds, based on the positive canine examination result detailed above.   Consequently,

based on these facts, and others detailed in this affidavit, I have probable cause to believe, and do

believe, that a search of Subject Parcel 1 and 2 will yield evidence of criminal activity.

## Conclusion

    30.    Based on the foregoing, I have probable cause to believe, and I do believe, that

Subject Parcel 1 and 2 more completely described in Attachment A-1/A-2, for evidence,

contraband, fruits, and instrumentalities of violations of the federal criminal statutes involving

the Unlawful Use of the U.S. Mail with Intent to Distribute Proceeds of Unlawful Activity, in

violation of 18 U.S.C. § 1952(a)(1); the Unlawful Use of a Communication Facility (U.S. Mail)

to Distribute Controlled Substances, in violation of 21 U.S.C. § 843(b), and Conspiracy to

**Affidavit of David Hardin**                                        **Page 11**

commit this offense, in violation of 21 U.S.C. § 846; the Distribution of Controlled Substances,

in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to commit this offense, in violation of 21

U.S.C. § 846; and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853.

As set forth above, I have probable cause to believe that such property and items, as described in

Attachment B, will be found in Subject Parcel 1 and 2, as described in Attachment A-1/A-2.   I

therefore request that the Court issue a warrant authorizing a search of Subject Parcel 1 and 2

described in Attachment A-1/A-2 for the items listed in Attachment B and the seizure of any

such items found.

31.     Prior to being submitted to the Court, this affidavit, the accompanying

application, and the requested search warrant were all reviewed by Assistant United States

Attorney (AUSA) Thomas H. Edmonds, and AUSA Edmonds advised me that, in his opinion,

the affidavit and application are legally and factually sufficient to establish probable cause to

support the issuance of the requested warrant.

DAVID L. HARDIN
US Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me this _10th_ day of December 2018.

HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Affidavit of David Hardin**                                                      **Page 12**

# EXHIBIT:   1

I, Officer Scott C. Groshong, attest the following to be true and accurate to the best of my knowledge and belief, based upon my experience handling K9 Rex and a review of my training and deployment records.

## *POLICE TRAINING*

I, Scott C. Groshong, am employed as a police officer with the Portland Police Bureau and have been a certified law enforcement officer within the state of Oregon in excess of twenty-five years. I currently hold an Advanced Police Officer Certificate from the Oregon Department of Safety, Standards and Training (DPSST).   I have been assigned to the Drugs and Vice Division (DVD) for the past nineteen years as a narcotics investigator, where my job assignment includes the investigation into violations of the Oregon Uniform Controlled Substance Act 475.840, as well as federal controlled substances violations.     My training and experience with narcotics investigations is based upon instructional sessions provided to me by the Portland Police Bureau and the Multnomah County District Attorney's Office regarding narcotics investigations.   The above-mentioned instructional sessions included training at the Oregon Board of Police Standards and Training Academy and the Portland Police Bureau Advanced Academy.   I have successfully completed an eighty (80) hour basic narcotics investigators' school offered by the United States Drug Enforcement Administration.   I hold a Bachelor of Science degree in Criminology from Southern Oregon State University, which I earned in 1992.   I have assisted in the execution of at least four hundred and fifty (450) search warrants for illegal controlled substances and have made or have assisted in the arrest of at least five hundred (500) persons for controlled substance violations. Since June of 2008 I have been assigned to the HIDTA Interdiction Taskforce (HIT). The primary responsibility for HIT team is the interdiction of narcotics and drug proceeds transported by couriers through the Portland International Airport, Amtrak train stations, various interstate bus lines and the highways and byways through the Portland Metropolitan area. HIT is also responsible for the interdiction of narcotics and drug proceeds carried through common couriers, such as FedEx, UPS, DHL and other parcel and delivery companies;

## *INITIAL K9 TRAINING ACADEMY AND BACKGROUND:*

In June 2008 I was selected as a drug dog handler for the Drugs and Vice Division.   The Portland Police Bureau sent me to a 120 hour Drug Detection School at Hill County Dog Center in Pipe Creek Texas.   At Hill Country Dog Center I ultimately selected K9 'Nikko' as my first Narcotics Detection K9.   K9 Nikko and I completed the 120 hour course and passed the Hill County Drug Detection Test – becoming a Certified Drug Detection Dog Team.   Upon our return to Oregon, K9 Nikko and I passed the Oregon Police Canine Association (OPCA) Detection Dog Certification Test certifying us as a Narcotics Detection Dog Team in the State of Oregon.   We took this test and successfully passed it an additional twelve times during the next seven years working together.   K9 Nikko and I logged over 750 hours of documented dog training which included more than 4,700 training searches.   Nikko was deployed over 2,500 times in our career together and assisted in the discovery of more than 3.5 million dollars in hidden narcotics and 1.5 million dollars in drug related proceeds.   K9 Nikko died in August

**Exhibit 1**                                                                                                    **Page 1**

2015 from cancer.   Following Nikko's passing, Officer Groshong's primary responsibility is as a Narcotics Detection Dog Handler working with drug K9 'Rex'.

### POLICE DRUG DETECTION DOG REX:

Beginning in November 2015 Officer Groshong began working with narcotics canine partner Rex.   Rex is a four year old pure bred Belgian Malinois originally purchased from Worldwide Canine, Inc. in Spring Branch, Texas by Gilliam County, Oregon in November 2012.   Deputy Richard Brown of the Gilliam County Sheriff's Office selected Rex as a pre-trained narcotics detection canine.   Deputy Brown told Officer Groshong that he successfully completed a 2 ½ week initial training school with Rex and successfully passed Worldwide's certification on November 21, 2012.   Rex has been trained as a passive alert detection dog, which means he sits as his final response at the source of the drug odors which he has been trained to find.   Rex has been trained to detect the odors emanating from cocaine, crack cocaine, heroin, marijuana, and methamphetamine.   Rex has been trained to reliably locate these drug odors in all types of environments through exposure during his initial training, maintenance training and real life deployments.

In November 2015 the Portland Police Bureau acquired Rex from Gilliam County, Oregon due to the Oregon law change surrounding the legalization of user amounts of marijuana.   The Portland Police Bureau's High Intensity Drug Trafficking Area (H.I.D.T.A.) Taskforce addresses trafficking of significant amounts of narcotics and their proceeds from source states throughout the United States.   The H.I.D.T.A. Taskforce is a federally funded team that focuses on the trafficking of narcotics and their related proceeds via high usage traveling methods.   These methods of trafficking include travel by air, bus, and train as well as shipping via the United States Postal Service and private shippers such as FedEx and the United Parcel Service.

### CERTIFICATIONS PASSED:

Deputy Richard Brown and K9 Rex first passed the Oregon Police Canine Association's Certification Test on January 23, 2013 and subsequently passed an additional three times in 2013 and 2014.   Rex and I are required by DVD policy to take and pass the Oregon Police Canine Association (OPCA) Detection Dog Certification Test twice each year. On November 10, 2015 Rex and I passed our first OPCA Drug Detection Dog Certification Test together and have subsequently passed this test 5 additional times. Our most recent OPCA Certification Test was passed on April 23, 2018.   The OPCA Certification Test is recognized in the Oregon Revised Statutes (ORS) and by passing it K9 Rex has been recognized as a "Police Animal" under the ORS definition. Passing the test also certifies Rex and Officer Groshong as a Drug Detection Dog team.   In addition to the OPCA Certification Test, Officer Groshong and K9 Rex passed the California Narcotics Canine Association (CNCA) Certification Test on April 7, 2018.

### OPCA CERTIFICATION CRITERIA:

The OPCA Drug Detection Dog Certification Test is designed as a performance based test which specifically measures the team's abilities to locate the source(s) of multiple drug odors in testing areas that reflect, as closely as possible, real deployment environments. It is a single blind test designed to measure the team's ability to clear a controlled negative testing areas, or blanks, which is devoid of drug odor without false positives. Only real drugs are used in the test and they

**Exhibit 1**                                                                                           **Page 2**

must be five grams or larger. Since the test is conducted in real life environments, distracting odors, masking odors and other proofing odors are naturally present in the testing environments. The teams must search three rooms/buildings – one of which is an unknown blank. They must search three vehicles – one of which is an unknown blank. They must search ten pieces of luggage or parcels – eight of which are blanks. They must search an open area which includes one drug odor.

The Certification Test is quite difficult and controls for false positives and handler cues through the inclusion of the controlled negative testing areas, blind finds and the presence of the distracting, masking and proofing odors. The failure rate for testing teams can be over 30 percent. The handler does not know the number or location of the drugs hidden in the testing areas – or the areas which are blanks. The test is designed to stress the handler to measure the dog's proclivity to offer false positives, false negatives or other strange behaviors under handler stress. In order to pass OPCA Certification testing, the team must score 100 percent in both Phase One (odor recognition) and Phase Two (comprehensive assessment). To score 100 percent the team must successfully locate all of the hidden drug odors in both phases of the test – without alerting to any areas where drugs are not hidden.

*MAINTENANCE TRAINING:*
Rex's maintenance training is ongoing with OPCA trainers and handlers. Normal maintenance training typically occurs on a weekly basis. Officer Groshong gets together with various OPCA Trainers and handlers and we set training problems for each other. This is done so that training duplicates real life – where the handler is doing the training problem 'blind' (i.e. the handler does not know where the drugs are hidden or if the training area is a blank). Training is conducted in all types of vehicles, all kinds of buildings/rooms, and various open areas and on both luggage and parcels/packages.

The maintenance training includes proofing odors, masking odors and unknown blanks which are all designed to measure or prevent false positives and handler cues respectively. In my training and experience, searching unknown blanks and blind drug hides are the single best way to prevent handler cuing of the dog. If the handler does not know where the drugs are hidden he cannot cue his dog into locating them. If the handler does not know the training area is a blank it measures the team's performance in clearing the area without any false positives.
The OPCA seminars provide real life scenario based training and exercises designed to challenge and improve the team. The seminars provide training venues that are new to the team and all the drug finds are done blind. The seminars provide the team an opportunity to run through extreme proofing, extreme masking, large drug quantities and other challenging exercises.  Rex has performed at a nearly perfect level in all maintenance training exercises and during certification testing. If a performance issue were to arise in training, the issue would be addressed in that episode, in the following maintenance training episode(s) and would continue until the problem is extinct.

Ongoing maintenance training includes regular currency training.   Currency training follows well established protocols which ensure that alerts to currency are the results of drug odor contaminants only.   This is accomplished by regularly exposing Rex to circulated and

**Exhibit 1**                                                                                             **Page 3**

uncirculated U.S. currency.   Uncirculated U.S. currency is used to prove that Rex does not alert to the unique odors from the ink, dyes, and paper materials used by the U.S. Mint in the manufacturing of currency.   Circulated currency is used to prove that Rex does not alert to the myriad of contaminants that can be found on bills in circulation.   In training, Rex does not alert to these proofing odors proving that Rex does not alert to currency in circulation.   These training protocols ensure that alerts by Rex to currency in the field are dispositive evidence that the level of drug odor contamination on the currency is higher than that of currency in circulation.

Rex and I have over 404 hours of documented drug dog training which includes over 1,955 searches.   Of those 1,955 searches I have documented only three unconfirmed alerts in training- where the reason for the behavior was either misinterpreted as an alert by the handler or some other unconfirmable stimuli prompting this behavior.   Rex accurately locates and alerts to all the hidden drug odors in training over 99 percent of the time. When we miss a hidden drug in training we diagnose the issue and solve it before leaving the search area. I have never noted any injury, illness, or other circumstance that has detracted from Rex's accuracy or ability to locate and alert to drug odor.

### DEPLOYMENT HISTORY:
Since November 2015, Rex has been deployed over 583 times and has alerted on 288 of them – resulting in an alert to deployment rate of 49.3%.   These deployments include assisting in residential search warrants, vehicle deployments, consent searches and many luggage, parcel and area searches.   More specifically, since November 2015, Rex has been deployed 89 times on vehicles and has alerted to 32 of them – resulting in a vehicle alert rate of 35.9%.   Of these 288 alerts in 583 deployments, 269 of these alerts have been corroborated – resulting in an alert to find rate of over 93% percent.   Rex has proven himself to be very reliable in locating hidden narcotic odors, including documented finds concealed in clothing, suitcases, duffel bags, packages, hidden compartments in vehicles, and concealed within residences.

In summary, I believe that Rex has an extremely high reliability rate in that he does not alert on every deployment, but rather, only when drug odor is present.   Rex has consistently demonstrated his ability to locate drug odors in all types of environments and conditions.   With respect to Rex's deployment and alert in this particular case, I did not detect any injuries, illnesses, or other circumstances that would detract from Rex's accuracy.

**Affiant**

Officer Scott C. Groshong #27445-Drug Dog Handler
Portland Police Bureau, Drugs and Vice Division

**Exhibit 1**                                                                          **Page 4**